UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In re:

RICHMOND HOSPITALITY LLC,

                       Debtor,

RICHMOND HOSPITALITY LLC,

                       Appellant,

  -against-

100-110 SOUTH BRIDGE LLC AND
SHAUGHNESSY CAPITAL LLC,

                       Appellees.

**MEMORANDUM AND ORDER**
23-cv-09393

LaSHANN DeARCY HALL, United States District Judge:

      On December 20, 2023, Richmond Hospitality LLC ("Debtor" or "Appellant") filed a notice of appeal from three orders of the U.S. Bankruptcy Court for the Eastern District of New York. (ECF No. 1.[1]) Debtor appeals three orders from the Bankruptcy court: (1) the order dated October 10, 2023, denying the Debtor's motion to approve a proposed sale of a lease to a new buyer, (*id.* at 4–5), (2) the order dated October 15, 2023, granting the Landlord's motion for relief from the automatic stay, (*id.* at 7–12), and (3) the order dated December 18, 2023, denying the Debtor's motion for reconsideration of the October 10, 2023 order, (*id.* at 14–15).

## BACKGROUND[2]

---

[1] Unless otherwise noted, the "ECF No. [docket number]" citations are to the record in the instant case, *Richmond Hospitality LLC et al v. 100-110 South Bridge LLC et al*, E.D.N.Y., Case No. 23-CV-09393-LDH.
[2] The following facts, taken from the appellate briefing and documents incorporated by reference therein, are assumed to be true for the purposes of this memorandum and order. In recounting the procedural history, the Court takes
(Continued)

On December 19, 2014, the Debtor entered into a 99-year ground lease (the "Lease") with the assignor, R.A. Properties, LLC, of 100-110 South Bridge LLC (the "Landlord" or "Appellee"). (Opening Br. Appellant ("Appellant's Br.") at 4, ECF No. 5.) The Debtor intended to develop a hotel (the "Hotel") on the property. (*Id.* at 5.) On November 22, 2016, the Lease was amended to allow the Hotel to provide accommodations on a short-term basis for transient guests, including travelers and tourists. (*Id.*)

On March 16, 2022, the Debtor filed a petition for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Eastern District of New York. (*Id.*) *See In re Richmond Hospitality LLC*, No. 22-bk-40507 (Bankr. E.D.N.Y. 2022). Upon a motion by the Debtor, on May 18, 2022, the court converted the bankruptcy to a Chapter 11 proceeding. (*Appellant's Br. at 5*.)

On September 27, 2022, the Landlord filed a motion for relief from the automatic stay (the "Motion for Relief from the Automatic Stay") to advance state court actions filed against the Debtor prior to the bankruptcy petition. (*See In re Richmond Hospitality LLC*, Bkr. ECF No. 103[3].) To resolve the Landlord's Motion for Relief from the Automatic Stay, the Debtor and Landlord entered into a stipulation (the "Stipulation") with three key provisions. (*Id.* at 6-7; Stipulation and Order Resolving the Mot. for Relief from the Automatic Stay ("Stipulation") at ¶3, ECF No. 2 at 6–12.) The first provision required the Debtor to make three cure payments to

---

judicial notice of court filings relevant to issues addressed herein. *See Hotel Emps. & Rest. Emps. Union, Loc. 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 540 n.1 (2d Cir. 2002) (taking judicial notice of public documents for first time on appeal). "Documents, which include 'findings of fact' or 'conclusions of law of the court' are deemed part of the record, including any transcripts, for which [Bankruptcy Rule 8006] makes express cost provisions." *In re Harris,* 464 F.3d 263, 269 (2d Cir. 2006); *see also In re McCarthy,* 230 B.R. 414, 417 (9th Cir. BAP 1999) ("Whenever findings of fact and conclusions of law are rendered orally on the record, it is mandatory that an appellant designate the transcript under Rule 8006. There is no other way for an appellate court to be able to fathom the trial court's action")

[3] Docket entries for filings in the underlying bankruptcy proceeding, *In re Richmond Hospitality LLC*, No. 22-BK-40507 (Bankr. E.D.N.Y.), are cited as "*In re Richmond Hospitality LLC*, Bkr. ECF No. [docket item number]."

the Landlord totaling $250,000. (*Id.* at 8–9.) The second provision required the Landlord to "support and not interfere in any way with the Debtor's Sale" of the Lease subject to specified terms and conditions of the sale. (*Id.* at 9.) The third provision laid out the terms and conditions of the sale of the Lease to be held by auction. (*Id.*) Among other things, the terms and conditions required that the auction begin no later than fifty days from the date of the order approving the terms and conditions of the sale. (*Id.*) The terms and conditions also required the auction to close to the successful bidder within thirty days from the date of the order confirming the auction results. (*Id.*)

In satisfaction of the first provision, the Debtor paid the Landlord the $250,000 cure payment. (Appellant's Br. at 7.) An auction was held on May 10, 2023 (the "Auction"). (*Id.* at 8.) There was a single bidder, Tri-Rail. (*Id.*) On June 30, 2023, the Debtor filed a motion, pursuant to sections 105, 363 and 365 of the Bankruptcy Code, seeking an order approving the sale of the Lease to Tri-Rail. (Mot. for Entry of Order Approving the Sale (the "Sale Motion"), ECF No. 2 at 29–40).

Sometime during the pendency of the litigation, the Debtor learned that interested hotel builders and operators declined to submit a bid on the Lease following the Landlord's public resistance to allowing the Hotel to be used to house asylum seekers. (Am. Mot. for Entry of Order Approving the Sale (the "Am. Sale Mot.") at ¶ 6, ECF No. 2-1 at 18). In an attempt to clarify that the Lease permits such usage by the Hotel, the Debtor filed an amendment to the Sale Motion on July 11, 2023, requesting the Bankruptcy Court's recognition that the Lease allows the Hotel to be used for "any and all lawful purposes, and in accordance with all rules and regulations" which would "include migrant individuals seeking asylum and shelter pursuant to the programs implemented by the City of New York." (Am. Sale Mot. at ¶¶ 7–8.) On July 14,

3

2023, Tri-Rail withdrew its offer following its discussions with the Landlord regarding limitations on the use of the land. (Appellant's Br. at 9–10.)

On August 25, 2023, the Debtor filed a motion seeking to sell the Lease to a new buyer (together with the Sale Motion and Amended Sale Motion, the "Sale Motions"). (Appellant's Br. at 10.) At a hearing on November 29, 2023, the Bankruptcy court denied the Sale Motions. (Sept. 20, 2023 Tr. of Hr'g on Sale Motions ("Sale Motions Hr'g"), 27:11–28:7, ECF No. 2-3 at 128–129.) At the hearing on the Sale Motions, the Bankruptcy Court found that the Stipulation required the Debtor to identify a buyer through the auction and close on the successful bidder; and that it did not allow the Debtor to engage in "another sale" "after the auction." (*Id.*) On October 10, 2023, the Bankruptcy court entered an order denying the Sale Motion and the Amended Sale Motion ((the "Order Denying the Sale Motions"), ECF No. 2-3 at 165–166.)Sale Motions for the reasons stated on the record at the September 20, 2023 hearing (the "Order Denying Sale Motions"). On October 15, 2023, the Bankruptcy Court granted the Landlord's Motion for Relief from the Automatic Stay, thereby terminating the automatic stay (the "Order Terminating Automatic Stay", ECF No. 2-3 at 167–172.).) Thereafter, on October 23, 2023, the Debtor filed a motion for reconsideration of the Order Denying the Sale Motions (Debtor's Mot. for Reconsideration of Order Denying Sale Motions and Order Terminating Automatic Stay ("Mot. for Recons."), ECF No. 2-3 at 173–195.). At a hearing on November 29, 2023, the Bankruptcy Court denied the Motion for Reconsideration on the record. (Tr. of Hr'g on Mot. for Reconsideration ("Recons. Hr'g"), 28:10–41:8, ECF No. 3-6 at 134–47.)

## DISCUSSION

**I.    The Bankruptcy Court appropriately denied the Sale Motions**

4

Appellant maintains that the Bankruptcy Court erred in denying the Sale Motions. (Appellant's Br. at 14–18.) District courts review orders from the Bankruptcy Court related to the sale or lease of property for abuse of discretion. *In re Lorick*, 634 B.R. 220, 223 (E.D.N.Y. Dec. 14, 2021) (citations omitted). That is, when the Bankruptcy Court renders a decision that (1) "rest[s] on an error of law, such as application of the wrong legal principle, or (2) a decision that, though not necessarily the product of legal error or clearly erroneous factual finding, cannot be located within the range of permissible decisions." *In re Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 678 (2d Cir. 2003) (quoting *Zervos v. Verizon N.Y., Inc.,* 252 F.3d 163, 169 (2d Cir. 2001)) (internal quotation marks and alterations omitted). Appellant argues that the Bankruptcy Court's decision rested on the erroneous factual finding that the Debtor delayed its sale efforts and that its decision rewarded the Landlord for interfering with the sales process. (Appellant's Br. at 14–18.) For the reasons set forth below, the Court is unpersuaded by both of Appellant's arguments.

In arriving at its determination to deny the Sale Motions, the Bankruptcy Court turned to the terms and conditions of the Stipulation, which governed the sale of the Lease. (*See* Sale Motions Hr'g Tr. at 27:11–17.) In doing so, the Bankruptcy Court noted that the Stipulation must be treated like a contract between the parties. (*Id*. at 27:11–12.) This was not error. *See U.S. v. Assets of Revere Armored, Inc*., 131 F.3d 132, at *3 (2d Cir. 1997) (treating a stipulation as a contract among the parties subject to analysis under general principles of contract construction and interpretation). Indeed, at the hearing on the Sale Motions, the Debtor agreed as much, noting "I think your honor is correct. You're looking at the stipulation as a contract." (Sale Motions Hr'g at 30:20–21.) The Stipulation provided the following terms and conditions of sale:

> (a) Auction process to start on the entry of an order approving this Stipulation and the Terms and Conditions of Sale;

5

   (b) Auction date to be held not later than fifty (50) days from the date of the Order approving the Terms and Conditions of Sale[;]

   (c) Closing to the successful bidder to be held thirty (30) days from the date of an order confirming the auction results ("Closing Date"), with the successful bidder being allowed to request one thirty (30) day extension of the Closing Date so long as it is done in writing at least ten (10) days before the Closing Date, and subject to paragraph 13 of the Terms and Conditions of Sale.

(Stipulation ¶ 3(a)-(c).) Accordingly, the Bankruptcy Court concluded that, pursuant to the terms of the Stipulation, any purchaser of the Lease must arise out of the auction process. (Sale Motions Hr'g Tr. at 28:3–23 ("The stip[ulation] is that the Debtor was going to close on this successful bidder . . . It does not provide for the Debtor to do additional marketing after the auction. It does not provide for another sale.").) Ultimately, the Bankruptcy Court determined that it could not approve the sale as proposed in the Sale Motions because the proposed buyer was not a successful bidder in the auction. (*Id.*)

  Curiously, the Debtor does not argue that the Bankruptcy Court's factual findings as they relate to the timing of the Auction and the subsequent proposed buyer were made in error. Nor could it credibly. The proposed buyer was not secured until August 25, 2023—over three months after the conclusion of the Auction on May 10, 2023. (Appellant's Br. at 8, 10.) Instead, the Debtor maintains that the Bankruptcy Court's error in denying the Sale Motions was due to the court's factual finding that the proposed purchase was untimely. (*Id.* at 16–17.) But the Debtor is incorrect as this was not the basis for the Bankruptcy Court's decision. Indeed, the Bankruptcy Court conceded that, in rendering its initial decision on the record, the court's reasoning may not have been clearly articulated. (Recons. Hr'g Tr. at 28:20–23.) It happens. However, at a subsequent hearing on the Debtor's motion for reconsideration, the Bankruptcy Court took great pains to clarify its decision to deny the Sale Motions. Importantly, the

6

Bankruptcy Court made plain that its decision did not rest on any question of timeliness. Judge Mazer-Marino stated:

> With respect to the debtor's argument that . . . the sale motion was made timely, that may indeed be true, but the court's ruling at the prior hearing did not rest on that basis. The court acknowledged the delay in the debtor making the motion to obtain approval of the sale to Tri-Rail, but the court's prior ruling rested on the grounds that the stipulation prohibited the debtor from assigning the contract to anyone but an auction participant. So even if the debtor is correct that the debtor made that motion timely . . . the court didn't rule on that basis.

(*Id*. at 33:21–34:7.) Against this backdrop, Appellant's argument that the Bankruptcy Court erred in denying the Sale Motions because the Debtor did not delay its sale efforts is wholly without merit.[4]

## II.    The Bankruptcy Court appropriately denied the Motion for Reconsideration

Appellant argues that the Bankruptcy Court erred in denying the Motion for Reconsideration of the Order denying the Sale Motions. (Appellant's Br. 18–22.) Appellant is wrong.

"A motion for reconsideration is reviewed under Rule 60(b) of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy proceedings pursuant to Rule 9024 of the Federal Rule of Bankruptcy Procedure." *In re Mader*, 661 B.R. 1, 10–11 (E.D.N.Y. 2021) (citing*Fed. R. Bank. P. 9024; *see In re Pinnock*, 833 F. App'x 498, 501 (2d Cir. 2020)). As the Bankruptcy Court noted "Rule 60(b) is not to be used as a 'vehicle for relitigating old issues, securing a rehearing on the merits or otherwise taking a second bite at the apple.'" (Recons. Hr'g Tr. at 33:13–16 (quoting *Ferreira v. Stern*, No. 22-CV-02182, 2023 WL 2787631, at *4

---

[4] Equally without merit is Appellant's argument that the Bankruptcy Court erred in issuing the Order Terminating Automatic Stay because the court's decision was based on the same reasoning as its denial of the Sale Motions. (Appellant's Br. at 13 n.7.) This Court clarified Appellant's misunderstanding of the Bankruptcy Court's reasoning for its denial of the Sale Motion as being based on contractual interpretation, and not the timeliness of the Debtor's motion. Furthermore, Appellant makes this barebones argument in a single footnote that does not point to any controlling decision or law warranting this Court's *de novo* review of the Bankruptcy Court's decision. For these reasons, this argument necessarily fails.

7

(E.D.N.Y. Apr. 4, 2023))). And, "[s]ince 60(b) allows extraordinary relief, it is invoked only upon a showing of exceptional circumstances." (*Id.* at 33:8–12 (quoting *In re Pinnock*, 833 Fed.Appx. 498, 501 (2d Cir. 2020)) (internal quotation marks omitted).) Unsurprisingly, therefore, Rule 60(b) provides for only six bases for relief to include (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) void judgment; (5) satisfied, released, or discharged judgment; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b)(1)-(6).

In support of its Motion for Reconsideration, the Debtor advanced three arguments virtually identical to those advanced on this appeal. (Mot. for Recons. at 12–16.) Specifically, the Debtor argues that: (1) the Debtor did not have a specific deadline by which it was required to proceed to a sale confirmation hearing, (2) any obligation by Debtor to obtain a sale confirmation hearing by a certain deadline was excused by the Landlord's conduct, which prevented the Debtor's performance, and (3) the motion should be granted to prevent unjust enrichment to the Landlord. (*Id.*) The Bankruptcy Court made quick work of disposing of Debtor's first two arguments related to the timeliness of the Sale Motion. (*See* Recons. Hr'g Tr. at 33:21–34:7.) As this Court has already noted, the Debtor wholly mischaracterizes the basis for the Bankruptcy Court's initial determination to deny the Sale Motions. (*See supra* pp. 5–7.) This failing rendered the Debtor's arguments on appeal and at the motion for reconsideration without merit. Indeed, the only "mistake" this Court can identify is the Debtor's insistence on misstating the Bankruptcy Court's rationale to deny its motion.

In a seemingly last ditch effort to avoid the Bankruptcy Court's determination, the Appellant argues that the Sale Motions should have been granted to "prevent unjust enrichment" of the Landlord. (Appellant's Br. at 17–18.) This argument is equally unavailing and does not

8

seem to fit squarely within any of the enumerated bases to grant a motion for reconsideration. Generously, this Court construes Debtor's argument as to suggest that the purported unjust enrichment of the landlord provides some "other reason" to justify relief. However, this Court agrees with the Bankruptcy Court's decision to deny Appellant's request for equitable relief because of the availability of an adequate remedy of law. (*See* Recons. Hr'g Tr. at 34:8–39:24.) *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Intern. N.V.*, 400 F. App'x. 611, 613–14 (2d Cir. 2010) (affirming the district court's dismissal of the unjust enrichment claim because an adequate remedy of law existed).

Accordingly, the Bankruptcy Court correctly denied the Debtor's Motion for Reconsideration.

## CONCLUSION

For the foregoing reasons, Appellant's bankruptcy appeal is DENIED. The Bankruptcy Court's October 10, 2023 Order Denying the Sale Motions, October 15, 2023 Order Terminating Automatic Stay, and December 18, 2023 Order Denying Reconsideration are AFFIRMED. The Clerk of Court is respectfully directed to mail a copy of this Order to Appellant's last known address, enter judgment, and close this appeal.

SO ORDERED.

Dated: Brooklyn, New York  
     March 31, 2025

/s/ LDH  
LASHANN DEARCY HALL  
United States District Judge